(No. 6302—

MICHAEL J. McDERMOTT COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 2, 1976.*

JAMES M. REDDING, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

BURKS, J.

The claim presented here is based on a contract and seeks to recover additional compensation allegedly owing on a construction project due to "loss of efficiency." Respondent filed a counterclaim seeking recoupment on Claimant's alleged failure to meet construction schedules.

The Claimant, Michael J. McDermott & Company, is an Illinois corporation engaged in the business of contracting for labor and materials as a general contrac-

tor. On or about April 23, 1970, the Respondent, State of Illinois, through its Department of Public Works and Buildings, Division of Highways, let bids for reconstructing the superstructure of a five-span bridge for Torrence Avenue over the Little Calumet River in the City of Chicago.

On May 18, 1970, the Respondent awarded the contract for this work to the Claimant. The formal contract was executed on May 27, 1970. On the same day, and subsequently at the State's request, meetings were held to discuss the possibility of expediting the work to alleviate adverse effects on nearby industrial developments. Commencement of work was already delayed because of a cement masons' strike.

The Claimant prepared a detailed recapitulation of cost for an accelerated schedule and submitted it to the State on June 3, 1970. A disputed issue of fact exists as to exactly what that figure was. Both sides agree that an estimate of $41,704.00 was submitted for costs including premium time. In addition, Claimant alleges it included a figure for "loss of efficiency factor" of $21,317.00 for a total of $63,021.00. In simplest terms, this "loss of efficiency factor" relates to the less than normal level of productivity supposedly exhibited by a worker facing a consistent schedule of overtime work.

At another meeting on July 10th a new work schedule was set consisting of five 10-hour days and one 8-hour day per week. Work was to begin one week after the labor disputes were settled. Mr. Val Gaesor of the State informed Claimant's Mr. Poynton that approval for the accelerated schedule had been received; that a change order would be processed, and that Claimant would be notified by letter. The letter was issued July 16th. It called for construction beginning July 27th. The

span was to be open to traffic by October 31st, and remaining work was to be completed within 29 working days.

Work began on schedule. The Respondent, on July 31, 1970, authorized a $60,000.00 addition to the contract which was received by the Claimant on August 25, 1970. The construction fell behind schedule early in October, and the roadway was not open to traffic until November 6, 1970. Final work was completed on May, 1971. This, according to project reports, was 25-1/4 working days subsequent to the bridge opening.

The recovery claimed in this case, if it were to be sustained, must be founded upon the existence of a contract, express or implied. There must have been a meeting of the minds by these parties. The question is whether the Respondent expressly or impliedly agreed to pay the Claimant for the "loss of efficiency factor."

In its argument, Claimant refers to its cost recapitulation of June 3, 1970, as an offer which was later accepted by the Respondent. This interpretation of the facts, however, runs contrary to the way the parties treated these figures. They dealt with them as estimates and not as fixed contractual terms.

The Respondent's letter of July 16, 1970, [Claimant's Exhibit 3 and part of Respondent's Exhibit 1] is phrased as an estimate for the additional non-productive premium time. The similarity to Claimant's figure is not crucial. According to the testimony of Ron Matthias, former State construction engineer and State's Exhibit 8, the State's $60,000.00 figure included over $58,000.00 for non-productive premium time.

The structure of this claim indicates that McDermott Construction Company, Claimant, considered the original figure as an estimate. Claimant's final bill for

the work being done on accelerated basis was $43,379.32 including $19,274.88 for "loss of efficiency factor." This is nearly $20,000.00 less than the original recapitulation and indicates the earlier figure was only an estimate, and final payment being dependent on the actual work done.

Finally, in deciding against this claim, the Court takes notice that there has been no showing of any loss or expenditure by the Claimant as a result of the "loss of efficiency factor." The State's payment to Claimant for the accelerated work schedule represents, on the record, adequate and fair compensation.

There is also no basis for Respondent's counterclaim for recoupment. The weekly reports of the State's engineer indicate that only 21-3/4 working days were consumed between the opening of the bridge to trafffic and final completion. This figure is well within the 29 working days allowed under the supplemental contractual agreement. [Claimant's Group Exhibit #6]

It is undisputed that the opening of the bridge to vehicular traffic did not occur until November 6, 1970, or six days late. However, the State at that time accepted the work without objection and in fact made no objection until after the filing of this suit. Such a delay in time amounts to a waiver of the State's right to ask for penalties, *Nibb v. Brauhn*, 24 Ill. 268.

Therefore, this Court disallows both the claim and the counterclaim in this case.